UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SAINT VINCENT HARRIS,<br><br>Defendant. | No. 18-cr-00238-EGS |

### REPORT AND RECOMMENDATION

On May 2, 2019, Mr. Harris pled guilty to Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense in violation of 18 USC § 924(c)(1)(A)(i). *See* ECF No. 26. This conviction resulted in a sentence of five years imprisonment and three years of supervised release to follow. His conditions of release included substance abuse testing, substance abuse treatment, alcohol restrictions, and vocational services programming. *See* ECF No. 92.

On September 14, 2023, the Probation Office filed a petition, alleging that Mr. Harris failed to notify his probation officer of a change in address, used and possessed THC, failed to enroll in a vocational services program, failed to attend substance abuse treatment, and failed to follow instructions given by the probation office. *See id.* On September 20, 2023, Judge Sullivan issued a supervised release warrant, which was executed on September 27, 2024. *See* ECF Nos. 93, 94.

The undersigned held a hearing on the return on supervised release violation warrant on September 27, 2024, where Mr. Harris was held without bond. Mr. Harris was later released to high intensity supervision and home detention on October 2, 2024. On October 10, 2024, the Probation Office filed a petition, alleging that Mr. Harris had been arrested and charged with possession with intent to sell a controlled substance in Fairfax, Virginia. *See* ECF No. 92.

1

Mr. Harris appeared in Fairfax County General District Court on September 20, 2024 for arraignment and was released on his own recognizance and bound over to federal custody. *See id.* The petition also alleged that Mr. Harris admitted to using and possessing THC. *See id.* Lastly, the petition noted that while Mr. Harris's residence was stable with his grandmother, he failed to participate in any cognitive behavioral therapy sessions and failed to attend a resource fair. *See id.*

On March 14, 2025, Judge Sullivan referred the case to the undersigned for a report and recommendation on Mr. Harris's violations. Over the course of the year, the undersigned held status hearings while Mr. Harris's Virginia case progressed:

- On April 22, 2025, the Probation Office remarked that Mr. Harris made strides by attending drug treatment programming and exploring vocation programs.
- On May 19, 2025, the Probation Office reported that Mr. Harris experienced some setbacks with his sobriety. The Court warned Mr. Harris that he had to attend treatment programming and stay in communication with his Probation Officer.
- On August 28, 2025, the Probation Office reported that Mr. Harris was doing better and attending treatment.

On October 27, 2025, the Virginia Judge dismissed the pending case without prejudice due to witness unavailability. *See* Virginia Judiciary Online Case Information System, Case#: GC24147245-00. On December 11, 2025, Mr. Harris requested that the undersigned cease trailing the Virginia case, citing the fact that the state prosecutors had not refiled the charges and the ongoing uncertainty surrounding the prosecution.

On January 2, 2026, the undersigned held a status hearing to discuss the posture of the case. The government stated that the Virginia prosecutors refiled the case in mid-December and that

there would be a hearing in Fairfax County General District Court on January 7, 2026.[1] However, the parties agreed that it no longer made sense to trail the pending Virginia case and requested a final hearing on violation. The Probation Office urged Mr. Harris to continue treatment and maintain a clean urinalysis in the coming weeks.

On January 21, 2026, the undersigned held a hearing where the Probation Office reported that Mr. Harris had successfully completed treatment. Mr. Harris admitted the pending violation. In turn, the government and the Probation Office requested that Mr. Harris receive a time-served sentence of imprisonment followed by no additional period of supervision. The government acknowledged that Mr. Harris had made progress in addressing his substance abuse issues. Mr. Harris joined in the requested sentence.

At bottom, "the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than punish them." U.S. Sent'g Comm'n, *Federal Offenders Sentenced to Supervised Release* (2010) ("Supervised Release Report") 9. Indeed, "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Thus, when a "defendant violates a condition of supervised release, courts must consider the *forward-looking* sentencing ends, but may not consider the *backward-looking* purpose of retribution." *Esteras v. United States*, 606 U.S. 185, 186 (2025) (holding that a district court may not revoke supervised release based on a belief that the defendant's original sentence was lenient).

Mr. Harris's supervision has reached the end of its useful lifespan. There are no further resources the Probation Office can offer Mr. Harris that he could not seek on his own. He has

---

[1] That case is now set for a preliminary hearing on March 25, 2026. *See* Virginia Judiciary Online Case Information System, Case #: GC26000071-00.

already completed court-mandated treatment. The Probation Office believes further court-mandated treatment will not benefit Mr. Harris.

Mr. Harris does not appear to pose a risk to the community. He has been in the community since September 20, 2024 with no arrests or convictions. This recent and sustained streak of lawful behavior is the best evidence that he is not a risk to public safety necessitating deterrence. And "[t]here is no indication of how additional punishment furthers deterrence." *United States v. Nwenze*, No. 19-cr-285, 2024 WL 4608867, at *4 (D.D.C. 2024). In fact, further incarceration endangers Mr. Harris and the public. *See United States v. Bryant*, 778 F. Supp. 3d 14, 22 n.7 (D.D.C. 2025) (discussing how "[e]xposure to the specific and general harms that pretrial detainees experience can result in long-lasting trauma."); Katie Rose Quandt and Alexi Jones, *Research Roundup: Incarceration can cause lasting damage to mental health*, PRISON POLICY INITIATIVE (May 13, 2021), at https://perma.cc/N6C2-8UWF (examining how experiencing or witnessing violence during incarceration was significantly related to "aggressive and antisocial behavioral tendencies as well as emotional distress."). And further incarceration would derail whatever progress he has made over the prior years. *See United States v. Mosley*, 312 F. Supp. 3d 1289, 1294 (M.D. Ala. 2018).

Given that Mr. Harris's period of supervision was set to expire on February 16, 2026, he does not appear to pose a danger to the community, he participated in treatment programs, he took responsibility for the violation, and based on the joint recommendation of the parties and the Probation Office: the undersigned recommends a finding that Mr. Harris violated his conditions of release, sentence him to a period of time served, and not impose any further period of supervision.[1]

---

[1] Per the Probation Office, no hearing is needed to adopt this Recommendation, as no additional supervision is ordered. Adoption of the Report and Recommendation would close this case.

Date: February 27, 2026

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE